Good morning. May it please the Court, Erica Shomer for the petitioner Sergio Gonzalez-Ortega. This is an appeal of the agency decision denying Mr. Gonzalez's applications for asylum, withholding of removal, and relief under the Convention Against Torture. The facts in this case aren't in dispute. Mr. Gonzalez is a gay Mexican man who suffered atrocious abuse, which the agency conceded constitutes persecution, and he suffered this persecution when he was a child in Mexico. He entered the U.S. in 2001, and he's never left. He applied for relief in the form of asylum, withholding, and Convention Against Torture relief. Can you address in what way the BIA erred in determining that there's no showing that the government acquiesced? Yes, Your Honor. I think that the most important case, the case that's directly on point, is this Court's holding in Madrigal v. Holder. What the inquiry has to be is what is the effectiveness of any efforts that have been undertaken by the government to protect a person. In Madrigal, what this Court said is, despite all the efforts to combat drug trafficking in Mexico, there's evidence that there's still rampant violence, and that the government is, in fact, incapable of doing so. In this case, what the Board relied on was the fact that there's legislation. Yes, same-sex marriage has been legalized. There's been some anti-discrimination legislation that has been passed. And it took that to be basically sufficient evidence that there's no possibility of harm or that the government wouldn't acquiesce in any type of harm. And what the BIA said is, the respondent did not report these incidents to police to show whether the police would have been unwilling or unable to protect him as a child, citing to Castro Martinez. Sure, Your Honor. I apologize. I thought the Court was talking about acquiescence in the Convention Against Torture context. So, yes, the Court cited to Castro Martinez, or the agency cited to Castro Martinez, to support the fact that there wasn't evidence that the government would have acquiesced or ignored the fact that he was being harmed. In Castro Martinez, it's fact-specific. Mr. Gonzalez, in this case, did not report. There are various reasons, one of which is that he was a child and he lived two and a half hours away from a police station, making it extremely difficult for him to report. But Castro Martinez doesn't say that there's a reporting requirement. What it says is that if you haven't reported, a person can demonstrate a lack of ability or willingness to respond to violence by showing that private persecution is widespread and well-known, but not controlled by the government, or showing that other people have made reports of similar incidents and there hasn't been an effective response. And I think that the country conditions evidence at the time does show that, that there was not a government response favorably to people who are perceived as gay. And, in fact, there's ample country conditions evidence that authorities routinely take advantage of especially effeminate gay men. And when they have contact with them, not only do they not take complaints seriously, but they actually commit acts of abuse including rape and beating. So you're relying on the BIA's kind of misanalysis of country conditions, not on any legal error in misunderstanding the law? Yes, Your Honor. And we do think that the country conditions, that what it did was basically cherry-pick certain country conditions evidence that favored its outcome and ignore the evidence. Mr. Gonzalez does not dispute that there have been legislative changes, but despite that, there's evidence that he submitted that attacks against gay people in Mexico, and especially effeminate gay men, have actually increased in response to the changes in legislation. And that evidence was discounted by the board, and we believe that it erred by doing so and that the record actually compels the conclusion that there is a clear probability of harm. We also assert that the board erred on the issue of nexus. The statute requires that one central reason a persecutor act be on account of a protected ground. And this court has confirmed in Perusimova that there can be more than one central reason that a persecutor acts. The protected ground doesn't have to be the most important reason, and an asylum applicant need not prove which reason was dominant. In this case, however, the board concluded that he was, quote, centrally targeted because he was vulnerable in general. And that centrally targeted implies that the board thinks that there's only one central reason and that the protected ground must be the most important reason that a person is persecuted, and that's contrary to the case law. But isn't there a particular factual issue going on here with the brother who seems to have just been attacking everyone? So, I mean, as I read it, the board is saying, okay, the brother made homophobic comments during this attack, but the brother was attacking all the siblings, essentially. And none of the others seem to have been gay, and he attacked the female siblings and the male siblings, and this brother just seems to have been an equal opportunity attacker. So, if we think that that's the case, or if there's evidence that that could have been the case, how is it unreasonable for the board to have thought that there was no particular protected ground that was the reason? It was just that this brother was out of control. There's two things I'd like to say in response to that. One is that the evidence of the abuse of the other siblings is pretty light. So, the first time that Mr. Gonzalez was raped, he intervened where his brother seemed like he was about to rape one of the sisters. Attack the sisters. Right? So, aside from that incident that he kind of walked into, he knew of no other time where his sisters were sexually abused by Samuel. On cross-examination, he testified that the government asked him, well, isn't it possible that Samuel was also raping them and you didn't know? And he said, yes. I mean, certainly anything's possible. He wasn't there every single second of every single day with his sisters. With respect to the abuse of Samuel's children, what Mr. Gonzalez testified to is that he hits and mistreats them. The agency seems to lump all the abuse together in kind of claiming that if he hits his children, that perhaps the abuse actually means sexual abuse. And there's not support for that in the record. And while it may be true that Samuel may have abused other people, including his children, that doesn't preclude the fact that one of the central reasons that he abused Mr. Gonzalez is his sexual orientation. And this court has held that to meet your burden of proof of showing the persecutor's motives, you can use direct or circumstantial evidence. And it's also held that an applicant's testimony can be sufficient to establish nexus. And in this case, and this court has recognized in other mixed motive cases, that statements by the persecutors when they're committing acts are very important. For example, in Kibibi, the rapist in that case mentioned the family's position in government while they were raping the petitioner. And this court held that it was conclusive evidence that the rape was politically motivated, even though it also could have been done out of a sense of revenge. In Lopez v. Ashcroft, this court found that repeated statements by the guerrillas against the petitioner in that case, that he shouldn't work for wealthy landowners, was sufficient evidence of a political motivation to the beatings that he received. So we submit that in this case, every single time Mr. Gonzalez was raped, his brother made homophobic remarks. He called him a fairy, he called him a faggot, he said he was a girl like his sister. And we submit that those statements, which were ongoing over a period of years, demonstrate that one central reason that his brother did rape him was because of his sexual orientation. Can I ask a question about the cousin, Javier? I think this brother issue is difficult because of the other attacks, but the record about Javier seems like there isn't really another reason other than the idea that he could get away with it because you could blackmail him about the sexual orientation issue. So I find it easier to think that Javier's attack was because of sexual orientation only. But it's only one attack, so is that enough to show past persecution here? I believe that it is, Your Honor. Mr. Gonzalez was seven years old, and being raped by a family member at the age of seven, I do believe rises to the level of persecution under this court's case law. And if I can loop back to your other question about the motivation, I do want to also address the alternate social group of family. So if this court does find that Samuel also preyed on other family members, then Mr. Gonzalez fits into that social group as well because this court has recognized that family is a social group. How would that get us the presumption of future persecution, though? I mean, I know that usually past lets you have the burden shifting to the government. But if Samuel's in the United States, which it seems like he is, and it's really just a family social group, how does that lead to any assumption that if your client was in Mexico, he would be persecuted? Well, Samuel's not in the United States. He was, and he went back. So he is in Mexico. He's been in Mexico. But he hasn't been attacking Petitioner for a long time, right? They were actually together in the United States for a long time. That's correct, Your Honor. He hasn't. But because the court didn't find past persecution, we would argue that that's an error and it does require remand at that point. Because there was past persecution, it does create the presumption, as Your Honor noted, of future persecution. And then certainly the court's going to have to look to the evidence about whether or not there's changed circumstances such that he would no longer be at risk of harm based on that protected ground of family. Can I talk with you for a moment about Castro Martinez? Both sides have cited to that case. And in your opening brief, you discuss at pages 37 and 38 about futility and future abuse. And you say, and I quote, This case is distinguishable from Castro Martinez because he did present evidence that if he had reported abuse, it would have been futile at best or would have exposed him to further abuse. You cite to three pages in the record. I've read those three pages. They don't support futility. Have you any other evidence of futility? Your Honor, the futility is in the country conditions evidence. We don't have any other witness. Well, sorry, Your Honor. I will say that he did testify about two incidents in his town of homosexual men who were brutally murdered. That's what is in the three pages that you cited? And that's your evidence of futility? Yes, and his testimony about what happened in his hometown. Thank you. I'd like to reserve the rest of my time for rebuttal, if I may. Thank you. Good morning. May it please the Court. Gladys Stephens-Guzman on behalf of the Attorney General. To address the Court's concern regarding the government's inability or unwillingness to protect Petitioner, this Court is, and both sides have argued, Castro-Martinez is dispositive of the issue. The problem with Petitioner's contention and analysis regarding Castro-Martinez is that they part from the premise that the Mexican government would have not reacted in an appropriate manner to the persecution of an effeminate child or of a homosexual. The problem is that there's no evidence that they wouldn't have reacted to a report of child rape, which is essentially what happened here. Because there is no evidence regarding that, pursuant to Castro-Martinez, that gap in proof remains unsolved. And where there is that gap, this Court requires Petitioner to sufficiently establish that the Mexican government would not have reacted or would have been unwilling to prosecute child rape. The BIA correctly cite to Castro-Martinez, I agree with you regarding the gap in evidentiary proof, but we've remanded in instances where the record shows that the BIA did not properly apply the case law. Castro-Martinez clearly says that you don't necessarily have to report the abuse, and what the BIA said is the respondent did not report these incidents to the police. It seems to require reporting, and that's the opposite of what Castro-Martinez says. How do we deal with that portion of the BIA's analysis? Yes, it would seem that that is an improper analysis and application of Castro-Martinez by the Board, but because what the Board did essentially was cite to the immigration judge's decision and to Castro-Martinez at the same time to the pages wherein the immigration judge correctly employs Castro-Martinez to this case, and under this Court's holding thing... Explain to me, because I think you're with me there, that the BIA's language inciting to Castro-Martinez appears to be in error. Appears to be in error. So now the government's going to rely on the citation to the IJ's treatment of Castro-Martinez, right? Correct. And so how did the IJ properly analyze Castro-Martinez? When you go to the immigration judge's decision, the immigration judge sets forth what Castro-Martinez holds, which is that there is no imposition of a reporting requirement, particularly considering that this is a child. What the immigration judge further determines is that the statement that... I apologize. So the question is not why the child didn't make any effort or every effort to report what was happening to him, but whether or not the government would react, how the government would react, whether or not the government would be unwilling or unable to protect a child who's reporting a rape. What the immigration judge holds in following with Castro is that reporting or not reporting is only one of the many factors in assessing whether the petitioner sufficiently established the government's reaction to had there been a report in that point in time. The administrative judge said on pages 18 and 19 of the decision, as in Castro-Martinez, the respondent has not provided any evidence that police or school officials would have ignored the abuse of a child. The court acknowledges the respondent was a child at the time of the incident and therefore may have been limited in his ability to report the incident. However, following Castro-Martinez, any limitations of his young age is not related to the government's inability or unwillingness to control his attackers. The respondent has not met his burden. Is that what you're relying on? Yes, correct, Your Honor. The way the government understands that interpretation is to mean what we were stating before, which is that the question is not the reasons behind the lack of report, but whether or not had there been a report or even if there hadn't been a report, does the record evince that the police are ignoring child rape? Can I talk to you about the BIA's application of the one central reason test? Because the BIA seemed to acknowledge that during all of these incidents of abuse that there was homophobic slurs and a lot of taunting specifically to his sexual orientation, but yet the BIA did not incorporate that into its analysis, it seems to me, from reading of the record. So can the government talk to me about its views on the application of that test? Of course. What the agency decided was that while his rape was past persecution, the fact that his own testimony established that he was being sexually abused because he was interfering with his brother's abuse of his other siblings. But that's what mixed motive is all about. That's why we have the one central reason test, an acknowledgment of the fact that there could be many motivations why somebody is getting attacked. So we have said in various cases that one way of determining, I think the best way of determining what the person's motivation is, is to look at what the abuser said was his motivation. Here, the first incident, the abuser, his brother said two things, right? Two comments specifically directed to the fact that he thinks that the petitioner is gay and also as punishment for interfering with the abuse of the sister. Correct. So the BIA took the punishment part and made that the central reason why he was being attacked, but doesn't acknowledge the fact that there were explicit statements made many times that goes towards sexual orientation. So how is that not a misanalysis of the one central reason test? To begin with, the agency did acknowledge, the board did acknowledge, that there were slurs and epithets, negative epithets espoused during the abuse. Nevertheless, under this court's holdings in Mansour, for example, and Parosimova, when the protected ground, in this case it would be those very derogatory terms, when those derogatory terms are merely incidental or subordinate to the true reason behind the abuse, then they don't constitute one of the central reasons. How is it incidental or subordinate to the reason for the abuse? Because as petitioner himself testified, not only was he being submitted to rape because he would protect his younger siblings from that abuse, but he also testified that his brother was basically a serial pedophile that didn't really need a reason to abuse the younger siblings, that he preyed on their vulnerable status when their parents weren't home, and in general, regardless of gender, sexual orientation, or even effeminate characteristics that petitioner himself displays. Otherwise, and he says, he himself testifies that he suspects that he abused most, if not all of the younger children, siblings, that he knows for a fact that he abused Refugio, a younger brother, who does not, as far as he knows and we know from the record, is not a homosexual and does not display effeminate characteristics. But is there an indication that the nature of that abuse was sexual? I think from his testimony, he thinks it was sexual. There might be a question as to whether the brother's abuse of his own children was just physical versus sexual, but I think when he speaks about the abuse that he tried to prevent and that he thinks ultimately occurred with his siblings and with Refugio in particular, was of the sexual nature. And when you put all of those things together, it's evident that the epithets were incidental and subordinate to the one central reason for, not the one, but one of the central reasons of the abuse. But couldn't he have abused or attempted to abuse the younger sisters because they were young and vulnerable, but also attempted to abuse Gonzales or Teca because he was vulnerable due to his, at that time, perceived sexual orientation? Doesn't that reading, does that reading compel the record? I don't think the record compels that reading. Could I go back to the question of the police not responding? So the BIA says that Petitioner offered no evidence, but didn't Petitioner offer the evidence of these two gay men who had been killed and nothing seems to have happened? Why isn't that at least some evidence that the police were not responding to attacks on gay people in this area? Because that's the improper question when it comes to government unwillingness to protect in his particular case. In his particular case, he would have needed to establish that he wouldn't have, for the past persecution and withholding of removal side of it, he would have needed to establish that the police was unwilling to protect or react to child rape. But that seems kind of impossible. I mean, I'm just not sure if that makes sense as a standard, because, I mean, if this is an area where kids are really far out in the country, he was seven years old, they're far from the police station, I mean, does he actually need to have known that there was some other kid who reported, I mean, how would you prove it? How do we even know if there would be another kid who even had the opportunity to report so you could see whether they responded or not? It's like the absence of, I mean, why should the absence go in the government's favor instead of his favor if we just don't know anything about this? Because the burden of proof to establish unwillingness is on him. But why should he have to actually show that there, it just may be an impossible thing to show that there's a kid in this rural area who reported and they ignored it. I mean, it might not be possible. Because that's the standard that this court set forth in Castro as well as in Garcia Millan. This court in Garcia Millan established that, and this, to be fair, was within the CAT context, established that ineffectiveness in preventing or in investigating criminal activities does not raise an inference that the public officials are likely to acquiesce in whatever harm, persecution, or torture is going on unless there is sufficient evidence, or as this court has used in Ornelas, has convincingly established that there is either corruption or other reasons for the inability or unwillingness to protect. That being the standard set forth by this court, the government doesn't need to, the agency doesn't need to view the absence of evidence as the petitioner meeting its burden of proof. Has this case gone to mediation? No. Is the government interested? No. The petitioner has a criminal record for possession of crystal meth, and at that point it becomes a priority. It takes it out of mediation. If the court has no further questions. The government proposes that because substantial evidence in the record supports the agency's decision such that a reasonable fact finder would not be compelled to conclude otherwise, this court should affirm the agency's decisions and deny the petition for review. Thank you. Thank you. I'd like to respond to a couple of issues that were raised. First, with the issue of punishment being the central reason that Mr. Gonzalez was attacked, what the evidence shows is that it was only the very first time that he was raped that he walked in when Samuel was trying to attack his sisters, and there is absolutely no evidence that any of the other incidents of rape which he testified occurred on average every two to three months for a period of the age of six until 13. None of those had anything to do with him intervening to try and protect any of his younger siblings, and so we take issue with the government's factual statements or reading of the record in that case. He also never testified that Samuel was a pedophile. That was something that was basically raised by government counsel. And we submit that if it is true, if you take the view that the government's advancing that he preyed on all of the younger siblings, then that just supports the alternate social group of family because Mr. Gonzalez was also a younger sibling. And we certainly do agree that there is an issue of vulnerability as your Honor raised, and there's two reasons that Mr. Gonzalez was vulnerable. One is because of his sexual orientation, and he was very fearful that if people thought that he was gay that he would be harmed not only by the community in general but also by his own parents. And there's evidence in the record that his family is very homophobic, and so that is one reason why he was so vulnerable to this abuse, and of course the other reason is that... Can I turn you back to Castro Martinez? Sure. So it does really seem to say that children don't have to report, but they have to show that the police wouldn't respond to children and that evidence that they don't respond to attacks on gay men are not enough to show that they wouldn't respond to children. How do we do anything different in this case? Your Honor, I think it does present a difficult question, and I do want to respond as far as the evidence. I looked at the brief, and there is also evidence that we presented in our submission, country condition evidence about futility that shows that impunity for crimes against sexual minorities is prevalent in Mexico. And so I don't think that the court can... I don't know how somebody would prove that child sexual abuse is... I don't know where we would get any sort of evidence to prove that. I agree with you, but I don't know what you're... I mean, we as a panel are bound by Castro Martinez, which was also about Mexico, so I'm having trouble figuring out... Let me also add, we have reports of child abuse in this country. There are ways of reporting child abuse and having action taken. It is not an impractical or impossible situation. Correct. And in the record, Your Honor, in that respect, the State Department report does address the issue of domestic violence and finds there domestic violence in general, which admittedly the State Department focuses on women and girls, but girls are children, and there it says that basically domestic violence is widespread and the authorities do little to stop it. And so I think we do have the support of that evidence that if domestic violence, big umbrella, is not taken seriously by the authorities, then this certainly also constitutes domestic violence in the form of rape when he was a child. And that's my time, unless the Court has more questions. I don't have any, I'm sorry, Ms. Friedland. Well, thank you very much for your argument, both sides. The matter is submitted for decision.
judges: Zouhary, Nguyen, Friedland